1
2
3
4                UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7   ROBERT MYERS, | Case No.  22-cv-07813-JCS |
| 8           Plaintiff, | **ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS** |
| 9    v. | **ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED** |
| 10   UCSF MEDICAL CENTER, et al., | |
| 11          Defendants. | Re: Dkt. Nos. 1, 2 |

**I.       INTRODUCTION**

     Plaintiff Robert Myers, pro se, applies to proceed in forma pauperis.  *See* dkt. 2.  Sufficient cause having been shown, that application is GRANTED.

     The Court now reviews the sufficiency of Myers's complaint under 28 U.S.C. § 1915(e)(2)(B).  For the reasons discussed below, Myers is ORDERED TO SHOW CAUSE why this case should not be dismissed.  Myers shall file either an amended complaint or a response to this order no later than February 23, 2023.  If he does not do so, or fails to cure the deficiencies identified herein, the case will be reassigned to a United States district judge with a recommendation for dismissal.

**II.      ALLEGATIONS OF THE COMPLAINT**

     Myers includes a number of defendants in his complaint:  UCSF Medical Center, San Francisco General Hospital, the San Francisco Police Department, the San Francisco Homeless Outreach Team and Homeless Services Agency, San Francisco Mayor London Breed, the San Francisco Department of Public Health and its director "Dr. Colfax," Episcopal Community Services, University of the Pacific School of Dentistry, a Matt Booth and "Dr. Gallagher," the San Francisco District Attorney's Office, and the San Francisco Housing Authority.  The complaint

United States District Court
Northern District of California

United States District Court
Northern District of California

does not include any numbered paragraphs. Numerous run-on sentences and some incoherent phrasing also make Myers's complaint difficult to follow at times, but this section summarizes the gist of the allegations. Nothing in this order should be construed as resolving any issue of fact that might be disputed.

### A.   Allegations Against UCSF Medical Center and Stanford Health Clinic

Myers first directs his allegations at the UCSF Medical Center for an incident that occurred on February 25, 2020. Compl. (dkt. 1) at 1. Myers alleges that he visited the UCSF emergency room with breathing problems and that the hospital staff gave him "something" to help him breathe that ultimately caused Myers to start choking and vomiting instead. *Id*. Then, Myers contends, the hospital staff intubated him against his will, causing "lasting damages to both of [his] lungs." *Id*. Myers also alleges that the hospital staff member who gave him the medication violated state and federal law by not documenting which medications Myers received that elicited such a violent reaction. *Id*. Myers asserts that he lost his part-time job and extra money as a result of the hospital staff's actions that allegedly violated, generally, FDA regulations and state medical laws. *Id*. He seeks $20 million in damages from the UCSF Medical Center in addition to "lifetime emotional and physical care" to remedy emotional and physical damage caused by this episode. *Id*.

Myers again visited the UCSF emergency room on November 26, 2020, for breathing trouble. *Id*. at 2. He asserts that he reiterated to the hospital employees that he did not want a breathing tube. *Id*. In response to his request, Myers alleges that the medical personnel:

> tried to take away my rights by abusing the medical hold law and due it away and the attending doctor told me she did not care if I sued her and she tried to get me meds that I was allergic to and she did that any after I tried to leave I was thrown to the ground and I was defending myself and was assured by UCSF security and three nurse with the meds that made me sick and suffered my left big toe nail being ripped off and a big bump on the left side of my head and black eyes and my windpipe was damaged which now prevents me from recording my music.

*Id*. As a result, Myers asks for an injunction "to stop ucsf [*sic*] from abusing the medical hold law and treating homeless people with disrespect and treating them including me with less humanity." *Id*.

United States District Court
Northern District of California

Myers also alleges malpractice at the "Sutter Health Mission Bernal Campus . . . AKA Stanford Health Clinic." *Id.* He claims that he was "wrongfully diagnosed with a viral infection when [in] fact [he] had a blood infection," which turned into a lung infection, which could have been prevented had the medical staff followed medical standards. *Id.* Myers asserts that he has lost over forty pounds, had lung failure, and still has infections, and would like to be compensated by the Stanford Health Clinic in the amount of $5 million. *Id.*

**B.    Allegations Against the San Francisco Police Department**

Next, Myers turns to the San Francisco Police Department ("SFPD"). *Id.* He alleges violations of his "constitutional and civil rights" when, more than twenty years ago in 2002, the SFPD wrongly seized Myers's car and accused him of having fake license plates. *Id.* Even though the police "apologized and cut up the ticket," they still submitted the report and Myers asserts that he has a "point on [his] record" from his car being intentionally sabotaged and towed more than once. *Id.* Myers claims that the alleged police misconduct has cost him "a lot of money in car [insurance]" as the DMV retains "inaccurate information" on his driving record. *Id.* at 6. Myers also claims that the police have targeted him on multiple occasions because he lives in his car, and that they took his car and lost all of his possessions that he kept in the car. *Id.* He requests that the DMV remove the inaccurate information and that the police pay for the alleged violations of his civil and human rights. *Id.*

**C.    Allegations Against the San Francisco Department of Public Health**

Myers alleges that Dr. Colfax[1] and the San Francisco Department of Public Health ("SFDPH") have been committing perjury by "lying to the public [and the San Francisco Board of Supervisors] and telling them they're helping people that are senior and disabled as well as have lung problems," when, instead, taxpayer money has in fact been going to "drugs and alcohol," which Myers labels a violation of "Federal and State as well as local law." *Id.* at 2–3. Myers reports that he has tried to reach out to the SFDPH and has emailed Mayor London Breed

---

[1] Myers does not include a first name in his complaint, but the Court assumes he refers to Dr. Grant Colfax, the San Francisco Director of Health.

"personally," but the SFDPH "refused to help muscles doing the hot[2] team for discrimination because they only help people that have drug and alcohol problems," not mental and physical problems, and Mayor Breed has refused to step in. *Id*. at 3.

### D.    Allegations Against Episcopal Community Services

Myers alleges that Episcopal Community Services ("ECS") promised to repair Myers's minivan, but instead only gave him gas cards and food vouchers, and that he is selling his car at a loss.[3] *Id*.  Myers requests $4 million from ECS in "punitive and compensatory damages for the loss of property and emotional stress." *Id.*

### E.    Allegations Against an Unidentified Hospital

Myers's complaint recounts an incident that occurred in the ICU of an unidentified hospital. *Id*. at 3.  He alleges that he spent some time in this ICU where "EMS 6" did not solve any of Myers's problems, and he had to use his own money for medication and to get a room for a weekend even though "they," another group or individual, promised to pay. *Id*.  Consequently, Myers now asks for an injunction that orders the City and County of San Francisco to "do its legally required [*sic*]"; the complaint does not specify what is legally required. *Id*.  Myers also asks for awards of "monetary damages" and "punitive damages" "for mental anguish" and for "medical malpractice." *Id*.

### F.    Allegations Against Former Supervisor Bevan Dufty

Myers includes former San Francisco supervisor and homelessness program director Bevan Dufty (sometimes erroneously spelled "Duffy") in his complaint as well. *Id*.  Myers alleges that Dufty took advantage of Myers's finances by loaning Myers $25,000 and then by trying "to get [Myers] to sign over all [his] life insurance." *Id*.  Myers asserts that Dufty "used the loan against [Myers] and refused to help [Myers]," which caused Myers to lose his "apartment in Washington DC" because Dufty promised to help pay for rent and then backed out. *Id*.  Myers

---

[2] This use of "hot" is perhaps a reference to San Francisco's Homeless Outreach Team.
[3] After discussing ECS's failure to repair his car, Myers states: "So, I'm selling for the loss of that." Compl. at 3.  The Court understands that to mean that he is selling his car, but if some other meaning was intended and is relevant to a potentially viable claim, Myers should clarify in an amended complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

writes that he will attach evidence in the form of Dufty's Cash App information, texts, and emails that support the allegations of abuse, but has not attached any such evidence to his complaint.  *Id.* at 5.  He requests $25,000 from Dufty, plus interest, "for his abuse of power and for his illegal acts." *Id.* at 3.

### G.     Allegations Against the San Francisco Housing Authority and Project RoomKey

Myers alleges that the city of San Francisco fraudulently mismanaged "project hotel room key." *Id.* at 4.  According to Myers, the city "must not be allowed to keep getting tax payors [*sic*] money or FEMA monies if the city's homeless department refuses to follow the Govenors [*sic*] order and FEMA regulations." *Id.*  Myers alleges as follows:

> when project hotel room key was started the governor and FEMA stated that only people that were 65 and older or had lung problems were able to get the room that mayor tried to hide from the public od the US government that the city was ignoring these regulations, the city only started to enforce the rules when the news did under cover stories as the mayor made staff and these hotels sign NDA's to try to keep the public and FEMA and the state in the dark then when the city was called out for violations of the law then and only then did they enforce the law but not all the way the city was still using tax payor's monies to buy hotel guests under project hotel room key drugs that are illegal under federal law and alcohol which is illegal under state and federal and local law the city tried to get away with this by telling the press in more than one press conference that they were using private donations and when the city was asked to provide a list of donors they could not and when the press got a copy of SFDPH's budget it is a line item expense and even though President Biden signed an order fulling funding this program including san Francisco's hotel program for the medically disabled and 65 and older people the city refuses to spend the monies to take the medically disabled and 65 and older off the street.

*Id.*  Myers requests that the Court "freeze all federal dollars that are for this program," and refer the matter to the U.S. Attorney's office to open an investigation to make the city return all money it received for the program, unless it follows the requirements.  *Id.*

Myers alleges that if the city of San Francisco had followed the rules to begin with, Myers could have avoided living in his car for the last eight months.  *Id.*  He asserts that what the city and the mayor have done "is text book waste and fraud and misspending of state and federal tax dollars," and they "must not be allowed to continue as it will hurt the people like me and keep us on the street." *Id.*  Myers requests that the Court appoint an outside agency to run Project

1   RoomKey appropriately, or alternatively order the city to refund all money it took for the project.

2   *Id.*

3        Additionally, Myers faults the San Francisco Housing Authority ("SFHA"), working in

4   tandem with the John Stewart Company, for "illegally" taking away Myers's federal housing,

5   denying him rights under "state housing laws and HUD regulations." *Id.* at 6.  Myers requests a

6   court order that would require the SFHA to take Myers off the "national do not rent data base and

7   restore [his] housing," in addition to requiring the SFHA and the John Stewart Company to pay

8   Myers a fine of $6 million.  *Id.*

9   **H.    Allegations Against University of the Pacific Dental School and San Francisco**
10  **General Hospital**

11       On April 8, 2021, Myers alleges that an "oral surgery clinic doctor" checked his teeth in

12  the emergency room at San Francisco General Hospital ("SFGH") and told Myers that his mouth

13  was not infected.  *Id.* at 5.  But the next day, when Myers visited the University of the Pacific

14  ("UOP") dental school, a Dr. Silver allegedly told Myers that he needed to immediately extract

15  some teeth and so Myers had two teeth "on the upper right side" removed.  *Id.*  A few days later,

16  on April 14, 2021, Myers asserts that he returned to the oral surgery clinic at SFGH to have

17  another two teeth removed that had become infected through SFGH's "lack of caring" or

18  inadequate job at monitoring Myers's teeth.  *Id.*  Myers alleges that SFGH denied Myers care and

19  would not remove the other two teeth, which, Myers reports, Dr. Silver said could have been

20  saved if the doctors at SFGH had actually done their jobs.  *Id.*  Myers claims he now needs dental

21  implants that Medi-Cal does not cover.  *Id.*  Furthermore, Myers alleges that SFGH tried to cover

22  up its wrongdoing by changing Myers's Social Security number on file "so that [SFGH] could

23  deny I was ever there."  *Id.*  From SFGH, Myers requests "damages for [his] lost teeth and repairs

24  and extra damages for violating the law by messing with [his] medical file."  *Id.*

25       Myers also alleges that he continues to be denied proper care "under state and federal law"

26  at UOP.  *Id.* at 6.  Myers claims that the dental school still refuses to finish work in Myers's mouth

27  even though it started treatment and received money from Medi-Cal to continue treatment of a

28  "mouth infection."  *Id.*  Myers asserts that since he became frustrated when UOP continued to add

United States District Court
Northern District of California

"unjustified extras" to his treatment, "no dentist will work on [his] mouth," and he has lost most of his teeth.  *Id.*

Myers blames both UOP and SFGH for discrimination based on his mental disability, and he requests a court order that would require UOP to finish treating Myers's oral issues in addition to $2 million for Medi-Cal fraud and mental and physical abuse and neglect.  *Id.*

### I.      Miscellaneous Allegations

Myers's complaint also includes several other more general allegations against various entities and individuals such as former Supervisor Matt Haney's office staff, the California DMV, the San Francisco district attorney's office, and an unnamed contractor for the San Francisco Public Works department.  *Id.* at 6, 7.

## III.      ANALYSIS

### A.      Legal Standard for Review Under § 1915

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that lacks such statement fails to state a claim and must be dismissed.

In determining whether a plaintiff fails to state a claim, the court assumes that all factual allegations in the complaint are true.  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions" and to "mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face."

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Twombly*, 550 U.S. at 570.

2       Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must

3 "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v.*

4 *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (cleaned up). "A district court should not dismiss a pro

5 se complaint without leave to amend unless it is absolutely clear that the deficiencies of the

6 complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

7 2012) (cleaned up).

8       **B.**    **Subject Matter Jurisdiction**

9       Federal district courts are courts of limited jurisdiction and may only hear cases falling

10 within their subject matter jurisdiction. Two of the most common grounds for federal subject

11 matter jurisdiction are federal question jurisdiction under 28 U.S.C. § 1331 and diversity

12 jurisdiction under 28 U.S.C. § 1332(a). Federal question jurisdiction encompasses claims "arising

13 under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity

14 jurisdiction encompasses cases where no plaintiff is a citizen of the same state as any defendant

15 and the amount in controversy exceeds $75,000.

16       Here, Myers's complaint does not establish jurisdiction under § 1332 because multiple

17 listed defendants share California citizenship with Myers. The complaint also fails to establish

18 jurisdiction under § 1331, despite Myers's vague references to some potential issues of federal law

19 regarding civil rights and regulation of health care and housing. Federal question jurisdiction

20 "extends over only those cases in which a well-pleaded complaint establishes either that federal

21 law creates the cause of action or that the plaintiff's right to relief necessarily depends on

22 resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*,

23 486 U.S. 800, 808 (1988) (cleaned up). This means that a federal law serves as the foundation of

24 one of the claims. *See id*. While Myers alleges that "federal laws" have been violated, he does not

25 specify which ones, and therefore cannot explain how they are foundational to his claims. *See*

26 *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983) ("[F]or purposes of statutory

27 'arising under' jurisdiction, . . . the federal question must appear on the face of a well-pleaded

28 complaint . . . .").

United States District Court
Northern District of California

1  Even assuming for the sake of argument that Myers's complaint includes claims that

2  sufficiently implicate federal laws, the complaint still appears subject to dismissal for the reasons

3  discussed in the following section.  Once Myers resolves those issues, and more clearly identifies

4  the claims he wishes to assert, the Court will be in a better position to assess subject matter

5  jurisdiction.

6  **C.    Myers's Complaint Does Not Comply with Rule 8, 10, or 20**

7  Rule 8(a) of the Federal Rules of Civil Procedure provides that a "pleading that states a

8  claim for relief must contain . . . a short and plain statement of the claim."  Fed. R. Civ. P. 8(a).

9  Courts have routinely dismissed complaints that are convoluted and difficult to follow for failure

10 to comply with that rule.  *See McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996) ("Prolix,

11 confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on

12 litigants and judges.").

13 Here, Myers's complaint can be difficult to follow as it recites and merges experiences

14 ranging from medical and dental care at multiple hospitals, to police harassment, to misuse of

15 taxpayer funds for COVID-19 housing, to disputes regarding car trouble, rent payment, and life

16 insurance.  Under the Federal Rules of Civil Procedure, the role of a complaint is not only to place

17 the defendants on notice of the allegations and claims, but also to outline the defendants' answers

18 and dictate the framework of the case.  Each defendant must respond with an answer specifically

19 admitting or denying each factual allegation of the complaint.  *See* Fed. R. Civ. P. 12(b).  Myers

20 attempts to lump together specific experiences with the affiliated defendant, but it is not always

21 clear where one allegation ends and another begins.  A defendant would have difficulty providing

22 a specific response to Myers's current complaint.

23 Moreover, while the Federal Rules of Civil Procedure "do not countenance dismissal of a

24 complaint for *imperfect* statement of the legal theory supporting the claim asserted," they require

25 at least " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' "

26 sufficient to put the defendants on notice of the basis for the claims against them.  *See Johnson v.*

27 *City of Shelby*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).  Myers

28 has not clearly identified any particular legal claim he wishes to assert that would put any

defendant on notice of the claims against them.

Myers's complaint also does not comply with Rule 10(b), which requires that a party "must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  These numbered paragraphs should present the particular facts of each claim in plain language and in chronological order.  If Myers is able to state a valid, plausible claim that warrants service on any defendants, presenting that claim in numbered paragraphs as required by Rule 10(b) will allow the defendants to admit or deny Myers's allegations as required by Rule 12.

Lastly, Myers's current allegations do not provide sufficient basis for joining the parties that he named.  Under Rule 20(a)(2), multiple defendants may be joined in a single action where:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Myers alleges an array of transactions that incorporate entirely different questions of law and fact.  It is unclear how, for instance, Mayor Breed and UOP or SFGH can be grouped together under the circumstances alleged in the complaint.  For another example, Myers's experience with Project RoomKey and a police ticket from 2002 seem unlikely to encompass common questions of fact or law.

While Myers is entitled leave to amend and cure these defects, it appears doubtful that a single complaint based on the full scope of misfortune that Myers alleges he experienced would satisfy the standard for pleading and joinder.  Should Myers choose to amend his complaint, he is encouraged to focus on a *particular subset of defendants* that he believes engaged in concerted or otherwise *related conduct* that caused him a discrete injury *actionable under federal law* (or some other basis for this Court's subject matter jurisdiction), and he should streamline his grievances accordingly.  At this stage of the case, when it remains uncertain which claims, defendants, and conduct would be the focus of any amended complaint, the undersigned declines to reach other potential flaws in Myers's present complaint.

## IV.     CONCLUSION

For the reasons discussed above, Myers is ORDERED TO SHOW CAUSE why this action should not be dismissed as frivolous and for failure to state a claim on which relief may be granted, by filing no later than February 23, 2023, either:  (1) an amended complaint remedying the defects identified above; or (2) a response to this order arguing why his present complaint is sufficient to proceed.

Any amended complaint must include the caption and case number used in this order (22-cv-07813) and the words FIRST AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the previous complaint, any amendment may not incorporate claims or allegations of Myers's original complaint by reference, but instead must include all of the facts and claims Myers wishes to present and all of the defendants he wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  If Myers files an amended complaint, he is encouraged to set forth the relevant factual allegations in the order they occurred in short, numbered paragraphs, and then to include clearly labeled sections identifying each legal claim he wishes to assert.

Myers is further encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance as he continues to pursue this case.  Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation.  Myers may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated:  January 19, 2023

JOSEPH C. SPERO
Chief Magistrate Judge